Filed 9/23/24  In re J.M. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.M. et al., Persons Coming Under the Juvenile Court Law. | |
| KINGS COUNTY HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.C.,<br><br>Defendant and Appellant. | F087917<br><br>(Super. Ct. Nos. 23JD0020, 23JD0021 & 23JD0022)<br><br>**OPINION** |

### THE COURT*

APPEAL from orders of the Superior Court of Kings County.  Jennifer Lee Guiliani, Judge.

Jesse Frederic Rodriguez, under appointment by the Court of Appeal, for Defendant and Appellant.

Diane Freeman, County Counsel, Thomas Y. Lin and Anadelia Dominguez, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Franson, Acting P. J., Snauffer, J. and DeSantos, J.

Appellant A.C. (mother) appeals from the juvenile court's order terminating her parental rights as to her three minor children at a Welfare and Institutions Code[1] section 366.26 hearing. The order included an order summarily denying her section 388 petition requesting the court reinstate family reunification services. On appeal, mother's sole contention is that the court erred by summarily denying her section 388 petition.

Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This family consists of mother; minors, J.M., J.C., and G.A., ages six, two, and one, respectively, at the time dependency proceedings were initiated; and Jose A., mother's boyfriend and presumed father of J.C. and G.A. J.M.'s father was deceased, and a man named alleged father for J.C. was never located and remained an alleged father throughout the proceedings. Mother is the only parent who is a party to this appeal, and to our knowledge no other parents have appealed separately.

In February 2023, the Kings County Human Services Agency (agency) received a referral alleging that J.M. had been physically abused by Jose, and that mother and Jose engaged in domestic violence in the presence of the children. J.M. had reported this to a friend, and the friend told J.M. to pack his backpack and run away, and J.M. responded he could not put his siblings in his backpack.

J.M.'s paternal grandmother reported to the investigating social worker that she had observed bruising on J.M.'s shoulders that he reported came from Jose. The paternal grandmother further reported that she had had J.M. in her care since the previous weekend when mother and Jose had a domestic violence incident. Paternal grandmother had advised mother to call the police and file for a restraining order, but mother allowed Jose back into the home and did not report the incident or seek a restraining order

---

[1]     All further undesignated statutory references are to the Welfare and Institutions Code.

because she said it would be too hard. Mother also told paternal grandmother J.M. was lying about being hit by Jose. Paternal grandmother provided a screenshot of a Facebook post made by mother with pictures of her with a swollen lip and other bruises captioned, "I got my head bautes open but he won't say what he's done."

J.M. reported to the social worker that Jose hit him for no reason almost every day he is at his mother's house with a belt or his hand. J.M. lifted his pant legs to show the social worker bruises he had recently sustained by Jose. J.M. further reported mother saw the abuse and told Jose to stop, but Jose did not stop. J.M. also stated that Jose would sometimes hit G.A. on her arms. J.M. stated he did not feel safe in mother's home but felt safe with his paternal grandmother, as well as his uncle. He denied mother ever hit him.

Law enforcement placed Jose under arrest. Jose reported J.M.'s allegations were false and that J.M. did not reside in the home. Mother reported Jose did not hit J.M. but did hit her. She asserted they had a domestic violence incident a few months prior that was reported to law enforcement but denied it took place in the presence of the children. She denied any domestic violence occurred the previous weekend as J.M.'s paternal grandmother reported. Law enforcement present during the investigation noted that mother's lips were swollen, and mother reported she had bit herself during an anxiety attack the previous day. When confronted with the Facebook post, mother stated the post was from a couple of days ago but the picture was from a couple of months ago; she posted it because she was upset. Mother reported that Jose drank a lot of beer and could sometimes get aggressive when he was drinking. She and Jose had been together for two years. She further reported J.M. had never been alone with Jose and got a lot of bruises at school. The agency later reported that in September 2022, law enforcement responded to a domestic violence incident involving mother slapping Jose across the face. During this contact, mother reported that Jose had been physically abusive toward her approximately 10 times since December 2021.

The maternal aunt reported to the social worker that she felt mother put Jose before the children. She said mother and Jose fought a lot, and mother had recently told her Jose had thrown a phone at her, but mother said she deserved it. According to the maternal aunt, mother was always trying to make excuses for Jose's abuse.

Jose had a previous criminal conviction for inflicting corporal punishment, two separate convictions for false imprisonment, and one conviction for DUI causing injury. Jose and mother both informed the social worker they would not be participating in a child family team meeting, and the children were placed in protective custody. J.M. was placed with a paternal relative, and J.C. and G.A. were placed together in a foster home.

The agency filed a first amended juvenile dependency petition on behalf of the children alleging all three came within the court's jurisdiction under section 300, subdivision (b)(1) (failure to protect) and that J.C. and G.A. additionally came within the court's jurisdiction under section 300, subdivision (j) (abuse of sibling). The petition specifically alleged the children had suffered or were at risk of suffering harm due to mother's failure to protect them from physical abuse by Jose and ongoing domestic violence between she and Jose. It alleged mother had witnessed the abuse by Jose on J.M. and failed to intervene and further did not believe J.M. was being physically abused by Jose.

At the detention hearing conducted on February 14, 2023, the juvenile court ordered G.A. detained from Jose and mother and J.M. and J.C. detained from mother only.[2]

Mother visited with the children regularly, and in March 2023, she attended a child and family team meeting and provided input into developing her case plan. In May 2023, mother participated in a social study. She gave a family background and stated she was

---

[2] At the time the detention order was made, Jose was an alleged father as to J.C. and had not yet been elevated to presumed father.

not in a relationship and did not answer the question pertaining to whether children were present during "arguments/altercations." She denied anyone in her "family circle" being arrested for domestic violence. She reported she was unable to answer the question regarding her feelings about the allegations. The department was recommending reunification services be provided to both parents.

A contested jurisdiction/disposition hearing was conducted on May 9, 2023. Mother testified she was in a relationship with Jose and lived with him from October/November 2020 until about two or two and a half weeks prior to the hearing. She was physically abused by Jose twice throughout their entire relationship, both times of which were from the previous year though he had broken things of hers on more than 10 occasions. She denied that her children had ever seen Jose hit her but said they had seen him break things. She denied witnessing or having knowledge of Jose abusing J.M. and had never seen any bruises on J.M. She did not believe Jose hit J.M. because she never let her children alone with Jose because she did not trust him with them. She had concerns for her children being around Jose because she did not want them to see "how rude he gets." She was currently working on obtaining a restraining order against Jose but had not yet filed the paperwork.

The juvenile court sustained the first amended petition and adjudged the children dependents of the court. The parents were ordered to participate in family reunification services, with mother's case plan consisting of a mental health assessment and recommended treatment, domestic violence services, parenting classes, drug testing, and a substance abuse assessment upon receipt of a positive test. Her service objectives were to: (1) "comply with all orders of the court"; (2) "[l]isten to and show acceptance and support of the disclosures made by your child(ren)"; (3) "[s]how that you will not permit others to physically abuse your child(ren)"; (4) [c]ooperate with services to achieve legal permanency"; (5) "[d]o not involve your child(ren) in attempts to control or intimidate your partner"; (6) "[t]ake appropriate action to avoid being a victim of further domestic

5.

violence"; (7) [d]o not behave in a manner that is verbally, emotionally, physically, or sexually abusive or threatening"; and (8) "[s]tay sober and show your ability to live free from alcohol dependency."

The agency's six-month status review report recommended reunification services be terminated and a section 366.26 hearing be set. Mother completed a parenting program but continued to disbelieve J.M.'s disclosures about Jose's abuse. She reported Jose had never hit her or J.M. The department reported mother was still in a relationship with Jose.[3] Mother informed the agency she did not agree with the mental health and domestic violence components of her case plan and refused to complete them. Mother expressed not understanding why she was required to take classes because she did nothing wrong to have her children removed. Father did not enroll in any of his case plan components. J.M. was observed to be "fixated and fearful" of Jose and disclosed that Jose used to hit him and mother all the time. He reported he did not want to return home to mother. J.M. was participating in therapy to process the abuse perpetuated by mother and Jose.

Mother was reported to be late, cancel, or reschedule visits on several occasions. When visitation occurred, mother was observed being attentive to the children, but J.M. was observed to be disconnected from mother and not wanting to sit next to her, and he tended to push back when she tried to give him a hug or talk to him. J.M. has expressed he did not really want to visit with mother and refused to speak with her on the phone.

At the six-month status review hearing conducted on November 6, 2023, mother made an offer of proof that if she were to testify, she would testify she had been testing negative for substances, finished parenting classes, completed the initial mental health assessment, and was amenable to doing to the domestic violence course previously

---

[3]     In September 2023, mother reported she and Jose had been evicted from their shared home.

ordered. Jose testified, among other things, that he and mother had separated "for a moment" during the case because it was very difficult but were living together at the time of the hearing. The juvenile court found the parents had not made substantive progress in their case plans and terminated reunification services. The court set a section 366.26 hearing.

The agency's section 366.26 report recommended parental rights be terminated as to the children and that adoption be selected as their permanent plan. J.M.'s relative care provider, who J.M. had been placed with since the outset of the proceedings, wished to adopt him, and J.M. reported he felt safe and happy with his care provider and did not want to return to mother's care. J.C. and G.A. had been with their care providers since February 2023, and they wished to adopt them. Mother had weekly supervised visits with the children and sometimes visited twice a week when she attended Jose's visits. Mother had also participated in phone calls and FaceTime calls with the children. Her visit attendance was inconsistent as she would not arrive on time for her visits or cancel or reschedule them on several occasions. At visits that did occur, mother would bring food for the children and play with them. The children showed affection toward mother, and mother was attentive and engaged throughout the visits. In February 2024, the visits were transitioned to biweekly.

On the day set for the section 366.26 hearing, March 20, 2024, mother filed[4] a section 388 petition requesting the court to order six more months of family reunification services and additional non-supervised visits. Mother alleged she knew she "did not take the necessary steps to ensure that [her] children were safe." She did not understand until

---

[4]     The juvenile court noted the parents had each attempted to file a section 388 petition "downstairs" (presumably the clerk's office) earlier that day but were unsuccessful. The court noted it does not accept documents for filing on the date of the proceedings but as counsel had been provided copies, the court decided to review and rule on the petitions "out of an abundance of caution."

7.

relatively recently that she needed help to address her history as a victim of domestic violence. She had made poor decisions in the past "regarding who [she] allowed to be near [her] children." She had since learned she "was not doing enough to better [her]self and in turn create a better environment for [her] children." She reached out to her family for assistance, and she no longer lived with Jose and instead lived with her father. Her environment was stable and she was seeking employment as a medical assistant and considering going back to school. She was active in her church. She completed four mental health assessments and re-enrolled in the domestic violence nonoffender program and would be receiving her certificate of completion on March 18, 2024. She felt her children would benefit from the skills she had developed, and she feared her children were being hurt under their care provider's care.[5]

To her petition, mother attached proof of completion of a mental health screening on February 23, 2024, and a document indicating she had begun domestic violence group counseling on February 26, 2024 and had completed two sessions. At the hearing, mother's counsel represented that mother had received her domestic violence completion certificate.

The court summarily denied mother's petition. In ruling, the court noted that mother's "recent recognition that maybe she didn't make the best choices in the past and acknowledging what she wants her future to look like certainly suggests that her

---

[5] Concerns regarding a cut on G.A.'s forehead and minor injuries on J.C. had been reported by the parents during the proceedings, and referrals were made to the department. The referrals were evaluated out as they did not meet criteria for investigation for abuse or neglect. Mother attached to her petition undated text messages containing pictures of J.C. with a bump on his head and text that stated, "The care providers let me know that Sunday afternoon they went out to dinner, and when they were leaving, the care provider opened the door to the car, and [J.C.] did not see it and walked right into the door." On appeal, mother does not raise the issue of the children's safety in their care providers' home and acknowledges the department found the care providers' home to be safe for the children.

circumstances are changing, but the information contained in the requests do not give rise to the court [f]inding that there has been a change of circumstances, nor setting the hearing would be appropriate at this time." In a written order, the court indicated the petition was denied because it did not state new evidence or a change of circumstances and that the proposed change in order was not in the best interest of the children.

The court went on to conduct the contested section 366.26 hearing and ultimately found the children were adoptable and rejected mother's argument that the beneficial parent-child relationship exception to termination of parental rights applied. The court terminated parental rights and ordered adoption as the children's permanent plan.

## DISCUSSION

We review the juvenile court's summary denial of mother's section 388 petition for abuse of discretion. (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1079.) The denial must be upheld unless we can determine from the record that the juvenile court's decision "exceeded the bounds of reason by making an arbitrary, capricious or patently absurd determination." (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 642.) When two or more inferences can reasonably be deduced from the facts, we have no authority to substitute our decision for that of the juvenile court. (*In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1505.)

A parent petitioning the court to modify a prior dependency order pursuant to section 388 must show the existence of changed circumstances or new evidence justifying the proposed change and that the proposed change is in the best interests of the child. (§ 388; *In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) A parent need only make a prima facie showing of these elements to trigger the right to an evidentiary hearing, and courts must liberally construe a section 388 petition in favor of its sufficiency. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309–310.) "However, if the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child, the court need

9.

not order a hearing on the petition. [Citations.] The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.) In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. (*In re Jackson W.* (2010) 184 Cal.App.4th 247, 258.)

The juvenile court did not abuse its discretion in determining mother had not made a prima facie showing of changed circumstances. After reunification services have been terminated, to make a showing of changed circumstances, the problem that initially brought the child within the dependency system must be removed or ameliorated. (*In re A.A.* (2012) 203 Cal.App.4th 597, 612.) "The fact that the parent 'makes relatively last-minute (albeit genuine) changes' does not automatically tip the scale in the parent's favor.' " (*In re D.R.* (2011) 193 Cal.App.4th 1494, 1512.) The change must be "material" or "substantial." (*In re N.F.* (2021) 68 Cal.App.5th 112, 120–121; *In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223.)[6]

Here, the court could reasonably conclude the petition's allegations did not support a finding that the problems that led to the dependency proceedings had been ameliorated or removed. Mother alleged she had completed four mental health assessments but did not explain what the results of the assessments were, or what, if any, treatment was recommended. There was no allegation that mother was following through with any mental health treatment. Mother only provided proof of one of the assessments, and it merely indicated a "mental health screening was conducted" on February 23, 2024,

---

[6]    As observed by the *N.F.* court, many courts, such as the juvenile court here, distinguish between "changed" and "changing" circumstances. These references "are another way of describing the distinction … between changes that are material and those that are not. However expressed, the point is that section 388 requires a change that is relevant and substantial (rather than irrelevant or de minimis) when considered in light of all of the circumstances of the case." (*In re N.F.*, *supra*, 68 Cal.App.5th at p. 121, fn. 3.)

and that mother was to follow up with another provider. Mother's assertions did not establish she had sought or gotten adequate mental health treatment.

Mother also alleged she was about to complete a domestic violence program, and later represented to the court she did complete the program, but the only document attached to her petition addressing domestic violence services indicated she had started the program, consisting of seven sessions, on February 26, 2024. Though she indicated she was no longer in a relationship with Jose and did not live with him, she gave no indication of how long of a period. As the agency points out in its respondent's brief, evidence on the record supports mother and father were in a relationship, or at least in in-person contact, as recently as February 2024, as they were together when the social worker called father. We acknowledge mother's petition demonstrated some insight into the risks of exposing her children to domestic violence. However, given the delayed and relatively recent participation in domestic violence services and separation from Jose, the juvenile court was not unreasonable in determining mother had not alleged an adequate change as to her relationship to Jose and understanding of the risk domestic violence posed to the children in general. This is particularly true considering that mother and Jose had already briefly separated and gotten back together during the proceedings, with mother at one point testifying she was planning on obtaining a restraining order against Jose. Notably, the petition made no assertion she had followed through with this plan.

Perhaps most importantly, however, mother did not acknowledge the abuse directly perpetrated by Jose on J.M. and did not allege in her petition whether she now believed J.M.'s reports that Jose had been abusing him or give any indication of how she planned to protect her children from this kind of harm in the future. The juvenile court could reasonably conclude from this that mother had not recognized her role in failing to protect J.M. from Jose and had not learned how to prevent future harm.

The juvenile court did not act arbitrarily or capriciously in concluding the assertions in the petition did not constitute a substantial change of circumstances justifying a hearing on the petition. Accordingly, we find no error.

## **<u>DISPOSITION</u>**

The juvenile court's findings and orders are affirmed.